**INDIANA DEPARTMENT OF STATE REVENUE, Appellant (Defendant Below),**

v.

**MARSH SUPERMARKETS, INC., Appellee (Plaintiff Below).**

**No. 2–978A315.**

Court of Appeals of Indiana, Second District.

Nov. 10, 1980.

262

Theodore L. Sendak, Atty. Gen., Victoria R. Van Duren, Deputy Atty. Gen., Indianapolis, for appellant.

J. B. King, Stephen H. Paul, Baker & Daniels, Indianapolis, for appellee.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Appellant–Defendant Indiana Department of Revenue appeals from a judgment [1] in favor of taxpayer Marsh Supermarkets, Inc., claiming that cash discounts extended by Marsh (Taxpayer) through coupons are

1.
### COUNT I
*Findings of Fact*

1. Plaintiff in Count I of this action, in compliance with IC 6–2–1–19, seeks the refund of gross income tax totalling $7,835.69, plus interest assessed and improperly collected by the defendant in respect to certain reimbursements of agency–incurred costs which plaintiff had received during the period March 30, 1969 to April 1, 1972 ("taxable period").

2. On December 15, 1968 and on March 15, 1970, respectively, plaintiff entered into certain written agency agreements with Marsh Drugs, Inc. (Drugs) and Marsh Village Pantries, Inc. (Pantries), under which agreements (Plaintiff's Exhibits 1 and 2) plaintiff performed various administrative functions as agent for Drugs and Pantries.

3. Pursuant to such written agency agreements (Plaintiff's Exhibits 1 and 2) plaintiff, during the taxable period, was reimbursed by Drugs and Pantries for costs incurred by plaintiff on behalf of and for Drugs and Pantries as their agent as follows:

| Fiscal Year | Amount Reimbursed |
|---|---|
| March 30, 1969 – March 28, 1970 | $ 4,053.48 |
| March 29, 1970 – April 3, 1971 | 180,286.85 |
| April 4, 1971 – April 1, 1972 | 207,444.16 |
| TOTAL | $ 391,784.49 |

4. In respect to the reimbursements of agency–incurred costs as set forth in Finding 3 above, the defendant has assessed and collected from plaintiff gross income tax in the amount of $7,835.69, plus interest.

5. The reimbursements totalling $391,-784.49, as set forth in Finding 3 above, were nontaxable reimbursements to plaintiff of costs incurred by it on behalf of and as agent for Drugs and Pantries.

### Conclusions of Law

1. Reimbursements to an agent of costs incurred by the agent on behalf of and for its principals are nontaxable gross receipts under the Indiana Gross Income Tax Act of 1933, as amended (IC 6–2–1–1 et seq.). *Department of Treasury v. Ice Serv., Inc.*, 220 Ind. 64, 41 N.E.2d 201 (1942); *Gross Income Tax Div. v. Indiana Associated Tel. Corp.*, 118 Ind.App. 669, 82 N.E.2d 539 (1948); Instruction 2–17, 1956 Indiana Gross Income Tax Regulations.

2. The assessment of gross income tax in the amount of $7,835.69, plus interest, by defendant against plaintiff's receipts totalling $391,784.49, for reimbursements by Drugs and Pantries of costs incurred by plaintiff on behalf of and as agent for Drugs and Pantries was improperly collected by defendant and was contrary to law and plaintiff is entitled to a refund of such tax in the amount of $7,835.69, plus any interest and penalty paid thereon, together with statutory interest on the total thereof from the date of payment, pursuant to IC 6–2–1–16 and IC 6–2–1–19.

### COUNT II
#### Findings of Fact

1. Plaintiff in Count II of this action, in compliance with IC 6–2–1–19, seeks the refund of Indiana gross income tax totalling $4,192.19, plus interest assessed and improperly collected by defendant in respect to certain cash discounts for quantity purchases which plaintiff had received from its vendor suppliers during the period March 30, 1969 to April 1, 1972 ("taxable period").

2. Plaintiff during the taxable period was and is engaged in the retail sale of groceries and other products in Indiana and in conducting its business plaintiff received cash discounts from its vendor suppliers for quantity purchases pursuant to various product promotion programs offered by such vendor suppliers.

3. The product promotion programs offered to plaintiff by its vendor suppliers included a cash discount based on the quantity of the promoted product purchased and sold by plaintiff during the promotion period and under such programs plaintiff was provided the alternative of accounting for the quantity of promoted products purchased and sold by plaintiff during the promotion period either by use of coupons placed in plaintiff's regular advertising or by a count and recount accounting of plaintiff's inventory.

4. Pursuant to such product promotion programs as offered to plaintiff by its vendor suppliers, plaintiff during the taxable period accounted for the quantity of products purchased and sold by it during the promotion period through the use of coupons and cash discounts were extended to plaintiff by such vendor suppliers based on such accountings.

5. Pursuant to such product promotion programs plaintiff performed certain services for which plaintiff was compensated by the vendor supplier's payment of a 3¢ per coupon handling fee which fee income compensated plaintiff for all services performed by it under such product promotion programs and was reported by plaintiff for gross income taxation and the tax thereon was paid by plaintiff.

6. In respect to the cash discounts received by plaintiff from its vendor suppliers as accounted for through the use of coupons, the defendant for the taxable period has assessed and collected from defendant gross income tax in the amount of $4,192.19, plus interest.

7. The discounts received by plaintiff from its vendor suppliers, as stated in Finding 4 above, were cash discounts for quantity purchases.

8. The cash discounts received by plaintiff from its vendor suppliers, as stated in Findings 4 and 7, were erroneously assessed by the defendant and the gross income tax thereon in the amount of $4,192.19 was improperly collected by defendant.

### Conclusions of Law

1. Cash discounts or similar allowances are not subject to the gross income tax and are deductible in determining taxable gross income. IC 6–2–1–1(m). Instruction 2–7, 1956 Gross Income Tax Regulations, Indiana Department of Revenue.

2. The cash discounts for quantity purchases as received by plaintiff during the taxable period from its vendor suppliers, pursuant to product promotions of such vendor suppliers under which plaintiff had accounted for the quantity of promoted products purchased and sold by it during the promotion period through the use of coupons, were nontaxable or deductible cash discounts and were not subject to the gross income tax.

3. The assessment of gross income tax in the amount of $4,192.19, plus interest, by defendant against plaintiff imposing gross income tax on the amounts of cash discounts for quantity purchases as received during the taxable period by plaintiff from its vendor suppliers, pursuant to product promotions of such vendor suppliers under which plaintiff had accounted for the quantity of the promoted products purchased and sold by it during the promotion period, was improperly collected by defendant

subject to Indiana Sales Tax; that Marsh is liable for Indiana Gross Income Tax on cash discounts received from its suppliers for volume purchases; and that receipts by Marsh of agency reimbursement payments from two subsidiaries are also subject to Indiana Gross Income Tax.

We affirm.

and was contrary to law and plaintiff is entitled to a refund of such tax in the amount of $4,192.19, plus any interest and penalty paid thereon, together with statutory interest on the total thereof from the date of payment, pursuant to IC 6–2–1–16 and IC 6–2–1–19.

## COUNT III
### Findings of Facts

1. Plaintiff in Count III of this action, in compliance with IC 6–2–1–19, seeks the refund of Indiana sales tax (viz., gross retail tax) totalling $15,509.64, plus interest, assessed and improperly collected by the defendant in respect to cash discounts which plaintiff had extended to its customers during the period October 4, 1969 to April 1, 1972 ("taxable period").

2. Plaintiff during the taxable period was and is engaged in the retail sale of groceries and other products in Indiana and in conducting its business plaintiff issued cash discount coupons ("Marsh coupons") to its customers.

3. Marsh cash discount coupons were issued either independently by plaintiff or by plaintiff in conjunction with various product promotion programs offered by various vendor suppliers of plaintiff.

4. In respect to Marsh coupons issued by plaintiff in conjunction with product promotion programs offered by plaintiff's vendor suppliers, the defendant for the taxable period has assessed and collected from plaintiff sales tax in the amount of $15,509.64, plus interest.

5. The Marsh coupons which defendant has assessed, as stated in Finding 4 above, were cash discounts ("trade or purchase discounts") extended by plaintiff, as the retail merchant, to its customers, the purchasers in selling at retail transactions.

6. The Marsh coupons issued by plaintiff in conjunction with product promotion programs offered by plaintiff's vendor suppliers were the sole commitment of plaintiff and plaintiff's selling price to its customers when such discounts were extended was the net selling price paid by such customers after allowance for or deduction of such discounts.

7. Plaintiff, in collecting as agent for the State the sales tax from its customers, computed the sales tax on plaintiff's selling price after deducting the Marsh coupon discounts described in Finding 6 above extended by plaintiff to such customers.

8. The discounts deducted by plaintiff during the taxable period were erroneously assessed by the defendant and sales tax thereon in the amount of $15,509.64 was improperly collected by defendant from plaintiff.

### Conclusions of Law

1. The sales tax is imposed on the selling price of tangible personal property sold in transactions constituting selling at retail and cash discounts ("trade or purchase discounts") are to be deducted in the determination of the selling price and the amount of sales tax to be paid by the purchaser and collected by the retail merchant. IC 6–2–1–1(k), IC 6–2–1–1(m), IC 6–2–1–37 and Regulation 36–000 IV, Indiana Department of Revenue Sales Tax Regulations.

2. The sales tax shall be borne by the purchaser and shall be paid by the purchaser to the retail merchant who shall collect the tax as agent for the State. IC 6–2–1–37.

3. The sales tax did not apply to the discounts extended by plaintiff pursuant to Marsh coupons issued by plaintiff in conjunction with product promotion programs offered to plaintiff by various vendor suppliers and amounts of such discounts were properly excluded by plaintiff in computing and collecting sales tax from its customers and in remitting sales tax to the State.

4. The assessment of Indiana sales tax in the amount of $15,509.64, plus interest, by defendant against plaintiff imposing sales tax on the amount of cash discounts extended by plaintiff to its customers during the taxable period was improperly collected by defendant and was contrary to law and plaintiff is entitled to a refund of such tax in the amount of $15,509.64, plus interest paid thereon, together with statutory interest on the total thereof from the date of payment, pursuant to IC 6–2–1–16 and IC 6–2–1–19.

### JUDGMENT

It is therefore ORDERED, ADJUDGED and DECREED that:

1. As to Count I of plaintiff's complaint, plaintiff shall recover from defendant and shall have refunded the sum of $7,835.69, plus any interest and penalty paid thereon, together with statutory interest on the total thereof from date of payment.

2. As to Count II of plaintiff's complaint, plaintiff shall recover from defendant and shall have refunded the sum of $4,192.19, plus any interest and penalty paid thereon, together with statutory interest on the total thereof from date of payment.

3. As to Count III of plaintiff's complaint, plaintiff shall recover from defendant and shall have refunded the sum of $15,509.64, plus interest paid thereon, together with statutory interest on the total thereof from date of payment.

4. Plaintiff shall recover from defendant its costs in this action.

## FACTS

The evidence and facts most favorable to the trial court's judgment are:

During the taxable period 1969–1972, Marsh Supermarkets, Inc. (Taxpayer) sold groceries and related products through retail outlets located in Indiana and Ohio, operating under the name "Marsh Supermarkets." In the course of its retail business, Taxpayer printed promotional "discount" coupons in its newspaper advertising. Two types of coupons were involved: "Marsh coupons" were straight discounts on goods sold for which Taxpayer would receive no reimbursement. "Promotional campaign" coupons, while appearing in the same newspaper advertising, were issued in conjunction with promotional campaigns by suppliers and producers of goods. Taxpayer would receive payment of the discount extended plus a service fee (3¢ per coupon)[2] from the producers/suppliers. In order to qualify for such payments, Taxpayer had to demonstrate that sufficient stocks of the discounted product were on hand throughout the promotional period. Both "Marsh coupons" and "promotional campaign" coupons were identical in appearance. Customers had no way of differentiating between the two types of coupons, and uncontroverted testimony established that cashiers were also ignorant of any distinction.

Indiana Department of Revenue (Department) sought to impose sales tax on the cost increment represented by the value of the coupons received by Taxpayer as partial payment for goods. Protest of assessment was denied "because of the fact that Marsh Supermarkets was claiming exemption for parts of transactions which constitute selling at retail by retail merchants." The Department claimed that coupons were partial consideration tendered by the consumer at time of purchase. The trial court found that because the "promotional campaign" coupons were the sole commitment of Taxpayer, the discounted price was the net price of goods, and tax was properly collected on that net by Taxpayer.

Because sales taxes are to be borne and paid by the purchaser, and because the coupons created a discount for those taxpayers, the trial court found for plaintiff Taxpayer, and ordered repayment of the erroneously assessed sales tax.

At about the same time as the coupon controversy developed, Taxpayer also received certain price breaks from its suppliers. Taxpayer qualified for these "Vendor discounts" by purchasing and selling minimum quantities of the promoted product. In order to prove these required sales, vendors permitted Taxpayer to account by the use of coupons, or by a count and recount method. In return, Taxpayer received (1) a cash or trade discount off the per case price of the product, (2) a further per package discount in regard to each package contained in the case, and (3) a 3¢ per coupon handling fee for each coupon delivered by Taxpayer to the vendor if Taxpayer elected to account for its sales to customers through the use of coupons. In its accounting procedures, Taxpayer treated all discounts so received as reduction of the cost of the products sold.

Taxpayer elected to use the coupon alternative to prove these sales, because it believed coupons offered advertising advantages. The use of coupons insofar as the vendors were concerned was simply to provide an accounting mechanism as to the quantities of goods sold. The trial court found that the discounts received by Taxpayer "were cash discounts for quantity purchases"[3] and therefore deductible under I.C. 6–2–1–1(m). The court therefore ordered repayment of the Indiana Gross Income Tax assessed on those vendor discounts.

The third series of transactions at issue in this case concerns reimbursements received by Taxpayer for operating in an agency capacity for two wholly owned subsidiary corporations (Marsh Drugs, Inc. (Drugs) and Marsh Village Pantries, Inc. (Pantries)).

---

**2.** Service fees received were reported as income received for services rendered, and are not at issue here.

**3.** *R.* at 260.

Under the terms of written agency agreements, Taxpayer agreed to act as agent for Drugs and Pantries in certain personnel matters. The express purpose of the agency agreement was to avoid duplication of administrative expenses. Drugs agreed to reimburse Taxpayer an amount equal to 1% (one per cent) of its total sales proceeds, and Pantries agreed to reimburse Taxpayer 3½% (three and one–half per cent) of its total sales proceeds. The Department's hearing officer testified that the only issue was the reasonableness of the percentage sales formulas used to determine the amount of reimbursements due Taxpayer from the subsidiaries. Testimony established that for Taxpayer to attempt to use a precise accounting measure would have been economically unjustifiable. Additionally, uncontroverted testimony indicated that the actual costs incurred by Taxpayer in carrying out its agency functions were close to the amounts actually paid under the percentage formulas.

Supported by the foregoing evidence, the trial court concluded that these amounts collected by Taxpayer were nontaxable reimbursements of costs incurred by it on behalf of and as agent for Drugs and Pantries, and that the Department's attempted assessment of Indiana Gross Income Tax on the amounts in question was error. Consequently, repayment was ordered.

The Department perfected this appeal from each of the above described rulings of the trial court.

## ISSUES

Three issues are presented by the Department for review:

1.  Are cash discounts extended by Taxpayer to its retail customers through the use of discount coupons subject to Indiana Sales Tax?
2.  Is Taxpayer liable for Indiana Gross Income Tax on cash discounts received from its vendor suppliers in connection with quantity purchases of goods?
3.  Is Taxpayer liable for Indiana Gross Income Tax on reimbursements received by Taxpayer pursuant to written agency agreements for costs incurred by it on behalf of and as agent for two wholly owned subsidiary corporations?

## DECISION

*ISSUE ONE–Sales Tax*

Are cash discounts extended by Taxpayer to its retail customers through the use of discount coupons subject to Indiana sales tax?

*PARTIES' CONTENTIONS*–Taxpayer contends that only the discounted cash sale price is subject to sales tax. The Department claims that discount coupons constitute an increment of the entire purchase price which is itself consideration and therefore taxable.

*CONCLUSION*–Cash discounts extended by Taxpayer to its retail customers are not subject to Indiana sales tax.

The trial court's decision is based primarily on an interpretation of statutes and administrative regulations. There is no substantial dispute between the Department and the Taxpayer as to the meaning of the statutes themselves, but rather how they should be applied to these transactions.

■ Essentially the Department's quarrel with the trial court's judgment is that the Department disagrees with that judgment without recognizing that there is substantial evidence to support it. Trial Rule 52(A) limits our standard of review. "On appeal of claims tried by the court without a jury . . . the court on appeal shall not set aside the findings or judgment unless clearly erroneous." *Id. See, e. g., Beech Grove v. Schmith*, (1975) 164 Ind.App. 536, 329 N.E.2d 605. An appellate court will not reweigh the evidence nor judge the credibility of the witnesses. *Jones v. State*, (1978) Ind., 377 N.E.2d 1349, but will affirm the judgment if there is sufficient evidence to support it. *First Nat'l Bank of Mishawaka v. Kamm*, (1972) 152 Ind.App. 353, 283 N.E.2d 563, 566.

Sales tax regulation 36–000 (IV) (Burns Administrative Rules and Regulations (6–2–1–37)–1 (IV)) states that "trade or purchase discounts" are "specific deductions from gross receipts." The sales tax imposed by I.C. 6–2–1–37 applies only to "gross income" received from "transactions of retail merchants selling at retail." In turn, I.C. 6–2–1–1(k) includes under the term "selling at retail" "only so much of the consideration as represents the price at which property is or may be sold."

██ The trial court had ample evidence to support its finding that Taxpayer was engaged in retail sales. Similarly, the record supports the finding that the coupons issued were cash *discount* coupons. The testimony of Taxpayer's vice–president, finance–secretary and treasurer, Hartman Smith, established Taxpayer's practices as related to discounts: "It would be very unlikely that we ... sell [an item at full price if a coupon discount is being offered]. We would have newspapers available in the store or find some other means to permit that customer to buy it at the discounted price."[4] Thus, the trial court had a basis for its finding that the coupons were mere devices facilitating the giving of purchase discounts. There was no error in the trial court's factual determination that the coupons were not "consideration."

The court's factual finding that the "coupons issued by plaintiff [Taxpayer] in conjunction with product promotion programs offered by plaintiff's vendor suppliers were the sole commitment of plaintiff (to its customers)"[5] is also supported by the evidence. Hartman Smith testified that Taxpayer was obligated to honor "promotional campaign" coupons irrespective of whether it met the terms and conditions of its vendor/suppliers' requirements. The coupon is therefore not the suppliers' obligation.

██ The sales tax burden is the liability of the purchaser, I.C. 6–2–1–37, due on "the price at which property is or may be sold" I.C. 6–2–1–1(k). Because coupon–using customers received a discount, the trial court properly held that the net price actually paid was the only portion of the transaction subject to sales tax.

The Department's attempted reliance on I.C. 6–2–1–38(i) and 6–2–1–49 is not appropriate. These are procedural sections which merely establish the method of accounting and assessing the tax. They shed no light on the subject of discount exemptions.

We affirm the decision to refund the erroneously assessed sales tax plus statutory interest and any other interest due, as ordered by rhetorical paragraph three of the judgment.

· *ISSUE TWO –Gross Income Tax on Vendor Discounts*

██ Is Taxpayer liable for Indiana gross income tax on cash discounts received from its vendor suppliers in connection with quantity purchases of goods?

*PARTIES' CONTENTIONS* –Taxpayer states that discounts it receives from its vendor suppliers are not subject to taxation as income because they are included under the statutory exemptions. The Department argues that because payments are received by Taxpayer, they are subject to income tax. Taxpayer responds that such payments are merely the formal bookkeeping method used to grant the exempt discounts.

*CONCLUSION* –Vendor supplier quantity discounts received by Taxpayer are not taxable as gross income.

I.C. 6–2–1–1(m) provides that taxable gross income does not include "cash discounts allowed and taken on sales." Taxpayer's receipt of discounts from its suppliers in exchange for quantity purchases of goods made pursuant to suppliers' promotional programs is a classic example of the "cash discounts or similar allowances" immune from gross income tax under I.C. 6–2–1–1(m).

Additional support for the trial court's finding on this issue is presented by Gross Income Tax Instruction 2–7, which provides that cash discounts are allowed deduction

4. *R.* at 135.

5. *R.* at 236.

on returns. 1956 *Indiana Gross Income Tax Regulations,* 47–48.

The Department's attempted characterization of these discounts as "coupon repayments" is not supported by the record, and presents no grounds for reversal. Uncontroverted testimony indicates that Taxpayer elected to use coupons rather than the count–recount method to qualify for its discount. "Claims for taxes cannot be based on mere bookkeeping." *Department of Treasury of Indiana v. Jackson,* (1941) 110 Ind.App. 36, 37 N.E.2d 31, 35. The law looks to substance, not form. *Ingram–Richardson Manufacturing Company of Indiana v. Gross Income Tax Division,* (1954) 233 Ind. 109, 117 N.E.2d 272.

The trial court's determination of this issue was well founded. There was no error.

*ISSUE THREE–Gross Income Tax on Agency Reimbursements*

Is Taxpayer liable for Indiana gross income tax on reimbursements received by Taxpayer pursuant to written agency agreements for costs incurred by it on behalf of and as agent for two wholly owned subsidiary corporations?

*PARTIES' CONTENTIONS–*Taxpayer argues that its use of a percentage share formula does not remove reimbursements received by it pursuant to agency agreements from the exemption in the code. The Department claims that such a formal difference in computation destroys the exemption.

*CONCLUSION–*Taxpayer is not liable for gross income tax on reimbursements received by Taxpayer pursuant to agency agreements providing for refund of costs incurred.

■ The trial court properly concluded that an agency relationship existed between Taxpayer and its subsidiaries. The question of the existence of agency is a question of fact. *Department of Treasury v. Ice Service, Inc.,* (1942) 220 Ind. 64, 41 N.E.2d 201, and there was evidence to support that conclusion.

Clearing away the legal underbrush we find that the issue really presented is whether the percentage reimbursement formulas used by Taxpayer were reasonable.

*Ice Service, Inc., supra,* is dispositive. Our Supreme Court there decided that use of a percentage allocation did not necessarily make such receipts taxable under the Act. *Ice Service* recognized that a strict item by item reimbursement procedure was not an indispensable characteristic of an agency relationship, but that the parties could agree as to allocated amounts, i. e., the use of percentage factors. Additionally, *Ice Service* found that the expense of a precise accounting system justifies a reasonable, estimated alternative.

■ There was persuasive evidence [6] that such a situation existed here, both in terms of the cost of formal accounting, and the relative precision of the percentage formulas used. Because payments from a principal to an agent as reimbursement for costs are not subject to the gross income tax, *Gross Income Tax Division v. Indiana Associated Telephone Corporation,* (1948) 118 Ind.App. 669, 82 N.E.2d 539, and because the payments so received in this case under the percentage formulas were fairly accurate, the trial court's decision in this issue has a basis in law and fact.

The Department's attempted reliance on *Western Adjustment and Inspection Company v. Gross Income Tax Division,* (1957) 236 Ind. 639, 142 N.E.2d 630, is not well taken. The case is clearly distinguishable on its facts. Unlike this case, the court in *Western Adjustment failed* to find an agency relationship, concluding instead that there was an independent contractor relationship. Consequently, the rulings of law in *Western Adjustment* were different than those in the case at bar, and are not applicable to these facts.

In the light of the foregoing, the trial court is in all things

AFFIRMED.

SHIELDS and SULLIVAN, JJ., concur.

***

6. *R.* at 193 (testimony of Marc Weinstein, Department Hearing Officer).